**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **DAWN M. ROBNETT,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:19-cv-00093-BP** |
| | § | |
| **ANDREW M. SAUL,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Dawn M. Robnett ("Robnett") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of Social Security ("Commissioner") of her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). ECF Nos. 1 and 16. After considering the pleadings, briefs, and the administrative record, the undersigned **REVERSES** the Commissioner's decision and **REMANDS** this action for further proceedings.

**I.      STATEMENT OF THE CASE**

Robnett was born on June 8, 1975, has at least a high school education, and can communicate in English. *See* SSA Admin. R. (hereinafter, "Tr.") 19, ECF No. 12-1. Her employment history includes work as a receptionist. *Id.* She asserts that the effects of her severe impairments render her disabled and entitled to relief under the SSA. ECF No. 1. Robnett filed applications for a period of disability and DIB on July 20, 2016. Tr. 15. In all applications, she alleged that her disability began on February 20, 2015. *Id.* The claim was denied initially and upon reconsideration. *Id.* Robnett requested a hearing, which was held before Administrative Law Judge ("ALJ") J. Dell Gordon on August 7, 2018 via video, with Robnett in Wichita Falls, Texas, and

the ALJ in Oklahoma City, Oklahoma. *Id.* A vocational expert ("VE") also appeared at the hearing. *Id.* The ALJ issued his decision on October 30, 2018, finding that Robnett was not disabled. Tr. 20-21.

Specifically, the ALJ employed the statutory five-step analysis and established during step one that Robnett had not engaged in substantial gainful activity during the period from her alleged onset date of February 20, 2015 through her last date insured of March 31, 2017. Tr. 17. At step two, he determined that Robnett had severe impairments of morbid obesity, carpal tunnel, rheumatoid arthritis, radiculopathy in the lumbar region, inter-vertebral disc displacement in the lumbar region, lumbar spondylosis without myelopathy or radiculopathy, mild bilateral C6 and S1 radiculopathy, mild left median neuropathy at the wrists, and mild sensory motor axonal polyneuropathy. *Id.* At step three, the ALJ found that Robnett's impairments did not meet or equal in combination one of the impairments listed in 20 C.F.R. pt. 404(p). *Id.*

At step four, the ALJ ruled that Robnett had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b), except she can walk or stand four hours; occasionally crouch and kneel; frequently balance; occasionally crawl and use ramps and stairs; and never climb ladders and ropes. Tr. 18. Additionally, the ALJ determined that Robnett must avoid concentrated cold or heat and exposure to hazards. *Id.* Further, he held that Robnett could perform past relevant work as a secretary because this work did not require the performance of work-related activities precluded by her RFC. Tr. 19. Because the ALJ determined that Robnett retained the RFC to perform past relevant work at step four, the sequential analysis could have ended without necessitating consideration of step five. *See* 20 C.F.R. § 404.1520(f). Nevertheless, the ALJ made alternative findings for step five, finding that considering Robnett's age, education,

work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she could perform. Tr. 19-20.

The Appeals Council ("AC) denied review on July 9, 2019. Tr. 1. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II.    STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. § 404 (2020). The SSA defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A) (2020); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be engaged in any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002) (citing 20 C.F.R. § 404.1572(a)–(b)). Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii); *see Stone v. Heckler*, 752 F.2d 1099, 1100–03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Part 404, Subpart P,

3

Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, the impairments must prevent the claimant from returning to past relevant work. *Id.* § 404.1520(a)(4)(iv). Before this step, the ALJ assesses the claimant's RFC, which is "the most [a claimant] can still do despite [the claimant's] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1). Fifth, impairments must prevent the claimant from doing any work after considering the claimant's RFC, age, education, and work experience. *Crowley*, 197 F.3d at 197–98; 20 C.F.R. § 404.1520(a)(4)(v).

"A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing [he or] she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

The Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (internal quotation marks omitted) (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence

is present. *Id.*; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (internal punctuation omitted) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

## III.    ANALYSIS

Robnett raises two issues on appeal. She claims that (1) the ALJ erred by failing to identify the Listings for which he found her impairments failed to qualify or discuss how he concluded that the severity of her impairments did not meet any Listing; and (2) such error was not harmless because evidence in the record supported a finding that she had an impairment that met the requirements of Listing 14.09D during the period at issue. ECF No. 16 at 18-28.

### A.    The ALJ failed to properly evaluate whether Robnett's impairments meet or equal a Listing.

Robnett argues that the ALJ erred by failing to identify any Listing for which her symptoms failed to qualify. *Id.* at 19. She also contends that the ALJ erred because he did not provide any reason for his adverse determination at step three of the sequential evaluation. *Id.* She argues that these omissions appeared even though her counsel had submitted a written request to the ALJ ten days prior to the hearing to enlist the assistance of a medical advisor to address the issue of whether Listing 14.09D was met or equaled. *Id.* She also notes that her counsel orally renewed the written request at the hearing on August 7, 2018. *Id.* at 19-20. The Commissioner concedes that the ALJ did not state which specific Listing he considered. ECF No. 17 at 5. However, he argues that this was a harmless error because the record shows that Robnett failed to meet or equal a Listing. *Id.*

In *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007), the Fifth Circuit held that the ALJ erred when she "summarily concluded" that the claimant's impairments were not severe enough to meet or medically equal one of the Listings, but "did not identify the [Listing] for which [the claimant's] symptoms fail[ed] to qualify," and did not "provide any explanation as to how she

reached the conclusion[.]" The court admonished that "[s]uch a bare conclusion is beyond meaningful judicial review" and held that the ALJ was required to discuss the evidence in the record and explain why the claimant was not disabled at step three of the sequential evaluation. *Id.* (internal quotation marks and citation omitted). The court explained that although an ALJ was not "always required to do an exhaustive point-by-point discussion," it simply could not "tell whether her decision [was] based on substantial evidence or not" because the ALJ "offered nothing to support her conclusion at this step." *Id.*

Like the ALJ in *Audler*, the ALJ here did not identify the Listings for which Robnett's symptoms failed to qualify. Neither did he explain how he reached the conclusion that her symptoms were not severe enough to meet any Listing. Rather than provide the basis of his decision, the ALJ made the conclusory statement that Robnett "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 . . . ." Tr. 17. "Although it is not always necessary that an ALJ provide an exhaustive discussion of the evidence, bare conclusions, without any explanation for the results reached, may make meaningful judicial review of the Commissioner's final decision impossible." *Inge ex rel. D.J.I. v. Astrue*, No. 7:09–CV–95–O, 2010 WL 2473835, at *9 (N.D. Tex. May 13, 2010) (citing *Audler*, 501 F.3d at 448). Accordingly, by providing no analysis at step three of his decision, the ALJ committed legal error.

**B.      The ALJ's error was not harmless.**

Having concluded that the ALJ erred in his step three determination, the Court must now determine whether this error is harmless. *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir.1988). "Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have [not] been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

To be entitled to relief, Robnett must establish that the ALJ erred and that this error casts into doubt the existence of substantial evidence to support his decision. *Morris*, 864 F.2d at 335. The question thus becomes whether there is evidence in the record to show that Robnett met her burden of demonstrating that she meets the requirements for Listing 14.09D.

To meet Listing 14.09D for inflammatory arthritis, a claimant must show (1) inflammatory arthritis as described in listing 14.00D6 and (2) repeated manifestations of inflammatory arthritis, with at least two constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss), and one of the following at the marked level: (a) limitation of activities of daily living, (b) limitations in maintaining social functioning, or (c) limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.09D. "As used in these listings, 'repeated' means that the manifestations occur on an average of three times a year, or once every 4 months, each lasting 2 weeks or more; or the manifestations do not last for 2 weeks but occur substantially more frequently than three times in a year or once every 4 months; or they occur less frequently than an average of three times a year or once every 4 months but last substantially longer than 2 weeks." *Id.* § 14.00(I)(3). In addition, the manifestations must occur within the period covered by the claim. *Id.* Further, a "marked" limitation means that the signs and symptoms of the impairment "interfere seriously" with a claimant's ability to function. *Id.* § 14.00(I)(5). Such functional limitation

> may result from the impact of the disease process itself on your mental functioning, physical functioning, or both your mental and physical functioning. This could result from persistent or intermittent symptoms, such as depression, severe fatigue, or pain, resulting in a limitation of your ability to do a task, to concentrate, to persevere at a task, or to perform the task at an acceptable rate of speed.

*Id.* § 14.00(I)(7).

A careful review of the record suggests that substantial evidence exists to indicate that Robnett meets the requirements for Listing 14.09D. As Robnett correctly notes, the first prong of the test for Listing 14.09D, which requires that Robnett satisfy the Listing for inflammatory arthritis found at Listing 14.00D6, is met by a comparison of her symptomatology and lab test results showing an elevated sedimentation rate and elevated C-reactive protein—both markers of inflammation.

The record also contains evidence suggesting that Robnett has experienced repeated manifestations of inflammatory arthritis. For example, in her April 28, 2015 report, Dianne M. Cooper, M.D. noted that although Robnett had no significant inflammation, she did "have very dry skin and extreme discomfort to even light touch globally, so any areas that we touch, even random areas, with any range of motion she is uncomfortable." Tr. 905. In the August 18, 2015 report, Dr. Cooper further noted that Robnett "still ha[d] discomfort to tenderness with range of motion of the shoulders, the hips, and the knees," and that there was "[t]enderness in the small joints of the hands and the feet with mild synovitis present at the wrists and the [proximal interphalangeal joints]." Tr. 903.

Additionally, Dr. Cooper noted in her January 18, 2016 report that Robnett still had "stiffness in the shoulders, mild synovitis in the [proximal interphalangeal joints], and discomfort in the hips on range of motion." Tr. 902. Finally, on September 14, 2016, Dr. Cooper observed that Robnett's pain was better controlled with her current pain management regimen, but she was "still having some minor stiffness in her hands and feet but not excruciating pain, and her biggest problem [was] big issues with back pain." Tr. 987. In the same report, Dr. Cooper noted that Robnett had "terrible flat forward flexion, discomfort on movement, spasm in the paraspinous musculature, and tenderness over the lumbar spinous processes to percussion," although she also

had "a very positive straight leg raise on the left." Tr. 988. Notwithstanding the portions of Dr. Cooper's reports highlighted by the Commissioner in which she noted that Robnett was "responding nicely" to medications, "doing better," "had more good days than she used to have," "was neurologically intact on examination," and "had no areas of gross inflammation," the totality of the evidence in the record suggests that the ALJ could have concluded that Robnett satisfied this particular criterion of Listing 14.09D.

To meet Listing 14.09D, Robnett next would need to establish the presence of "at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.09D. Robnett offered evidence in the record that could meet this requirement by demonstrating that she experienced severe fatigue and malaise. "Severe fatigue" is defined in the Listings as "a frequent sense of exhaustion that results in significantly reduced physical activity or mental function," and malaise is defined as "frequent feelings of illness, bodily discomfort, or lack of well-being that result in significantly reduced physical activity or mental function." *Id.* § 14.00C2.

Robnett points to references indicating that she did indeed suffer from severe fatigue and malaise. For example, on April 28, 2015, Dr. Cooper noted that a review of Robnett's systems resulted in positive signs of fatigue, weakness, chills, dizziness, headaches, muscle pain, muscle weakness, numbness/tingling, and heat/cold intolerance. Tr. 904-05. On October 27, 2015, Dr. Cooper noted that Robnett felt like her "upper body [was] locking up on her" when a "cold front came through." Tr. 932. Further assessments dated between May 16, 2016 and April 12, 2017 indicate a review of systems positive for fatigue and malaise; pain from neck to toes; pain from hips down to toes and top of right foot; general body pain; pain in hands, feet, knees, shoulders, and neck; and increased fatigue. Tr. 951, 931, 995, 1003, 1004, 1005. Therefore, had the ALJ

evaluated Robnett's impairments in light of Listing 14.09D, it would have been possible—given the evidence in the record—for him to have concluded that Robnett suffered from severe fatigue and malaise.

Finally, to satisfy Listing 14.09D, Robnett would need to show that she is markedly limited in her activities of daily living, maintaining social functioning, or maintaining concentration, persistence, or pace. Here, there is evidence in the record suggesting that Robnett is limited in her activities of daily living. For example, she indicated in a function report that she sits on the bed for a bit after waking up because going down the stairs immediately is too painful; doing laundry is a battle because of pain associated with bending; she spends most of the day in a bed or recliner except for bathroom breaks or meals; shower or brushing her teeth causes discomfort; nerve pain causes wearing clothes to hurt physically; and her children help with laundry and doing the dishes. Tr. 208-212, 215-217. A claimant can be markedly limited in activities of daily living even if she is "able to perform some self-care activities." 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 14.0016. Thus, there is some evidence in the record suggesting that Robnett is limited in activities of daily living, such that she possibly could have established the existence of such a limitation.

The ALJ may reach the same ultimate conclusion on remand regarding Robnett's entitlement to benefits. However, the Court cannot conclude that, had the ALJ made the required findings at step three, he necessarily would have found that Robnett did not satisfy Listing 14.09D. Therefore, the Commissioner's argument the ALJ's conclusion at step three is harmless error is without merit, and remand is warranted.

## IV.    CONCLUSION

The ALJ committed legal error by not identifying the Listings Robnett purportedly failed to meet and explaining why he determined she did not meet any Listing. This error was not

harmless, as records show that a possibility exists that Robnett met Listing 14.09D. Because the ALJ did not employ the correct legal standards, substantial evidence in the record did not support his decision, and the AC committed reversible error, the undersigned **REVERSES** the Commissioner's decision and **REMANDS** this action for further proceedings consistent with this Memorandum Opinion and Order.

It is so **ORDERED** on August 4, 2020.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE